FILED
2018 May-02  AM 09:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD WILLIS**, an individual, ) | |
| **and all others similarly situated,**   ) | |
| ) | |
| **v.**   ) | **Case No.** |
| ) | |
| **5 STAR ROOFING AND** ) | |
| **RESTORATION, LLC,** a Alabama  ) | **CLASS ACTION** |
| corporation, **d/b/a 5 STAR**   ) | |
| **ROOFING** ) | |

## CLASS ACTION COMPLAINT

**COMES NOW** Richard Willis (hereinafter "Plaintiff") and brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant, 5 Star Roofing and Restoration, LLC, an Alabama corporation, d/b/a 5 Star Roofing (collectively hereinafter referred to as "Defendant" or "5 Star") to put an end to its unlawful practice of placing unsolicited telemarketing calls to consumers in Alabama and nationwide. Plaintiff, for his Complaint, alleges as follows:

## INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., (hereinafter "TCPA") was enacted to protect consumers from unsolicited and

repeated telephone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither the Plaintiff, nor the other members of the putative Class, ever provided Defendant with their prior consent or express written or express consent to be called. By making the phone calls at issue in this Complaint, Defendant caused Plaintiff, and the other members of the Class, actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls, wrongfully occupying their telephone lines, and the monies paid to their telephone carriers for the receipt of such calls. In addition, the calls violated their right of privacy.

Because Defendant makes and/or facilitates unsolicited pre-recorded advertising and/or telemarketing calls ("Robocalls") to consumers without express consent or prior written express consent, Defendant has, and continues to, violate the TCPA.

In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited calling activities, as well as an award of statutory damages to the members of the Class, as provided under the TCPA, together with costs and reasonable attorneys' fees.

2

**I. PARTIES**

1.    Plaintiff Richard Willis (hereinafter "Plaintiff") is over the age of nineteen (19), and is a resident of Jefferson County, Alabama. Richard Willis received, after approximately April 2018, one or more pre-recorded advertising calls from Defendant without his express consent  or written consent and the calls did not include the opt out mechanism required by law.

2.    Defendant 5 Star Roofing and Restoration, LLC is a privately held construction entity, which was initially organized in, and which operates out of, Alabama. According to information and belief, Defendant 5 Star Roofing and Restoration, LLC is a limited liability corporation. Defendant operates in multiple counties in Alabama, including, but not limited to, Jefferson County.

3.    According to information and belief, Defendant 5 Star Roofing and Restoration, LLC manages operates and does business as ("d/b/a") 5 Star Roofing.

4.    Defendant has resorted to unsolicited Robocalls to grow its customer base.

**II. JURSDICTION AND VENUE**

5.    This Court has jurisdiction pursuant to 28 U.S.C. §1332, because Plaintiff and Defendant are residents of diverse states, and Plaintiff seek up to

3

$1,500 for each call in violation of the TCPA which, when aggregated among a proposed class number in the thousands, exceeds the $75,000 threshold exclusive of interests and costs.

6.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. §1331, as the following civil action arises pursuant to 47 U.S.C. § 227, et seq.

7.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.

8.     Venue is proper in the United States District Court for the Northern District of Alabama as a substantial part of the events or omissions giving rise to the claim occurred within the jurisdiction and within the Birmingham Division of the Northern District of Alabama.

### III. FACTUAL OVERVIEW

9.     Among other things, the TCPA prohibits certain unsolicited marketing calls, and restricts the use of automatic dialers and/or pre-recorded messages.

10.     The TCPA exists to prevent communications like the ones described within this Complaint. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private

4

homes—prompted Congress to pass the TCPA." *Mims v.Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

11.    In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank*, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

12.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the

plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

14.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015). "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49). The FCC has explained that calls motivated in part by the

intent to sell property, goods, or services are considered telemarketing under the TCPA. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id*.

15.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See* In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

16.    "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp*., No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

17.    Defendant 5 Star Roofing and Restoration, LLC is engaged in the sale and trade of residential and commercial roofing and construction.  Unfortunately,

in the pursuit of selling said goods, according to information and belief, Defendant conducted, and continues to conduct, nationwide telemarketing campaigns in violation of the TCPA. 47 U.S.C. § 227, et seq.

18.    In order to reach more customers, Defendant used an invasive and illegal method of advertising: unsolicited telemarking via a pre-recorded message and/or automatic dialer known as "Robocalling".

19.    Defendant, or their agents, place pre-recorded calls to consumers to advertise the sale of Defendant's goods and services.

20.    According to information and belief, Defendant made, and continues to make, these telemarketing calls to consumers statewide and nationwide without their express consent or prior written consent and without the required mechanism to allow call recipients to opt out of future calls.

21.    Defendant tried to comply with all rules, regulations, statues, and declaratory rulings related to its prerecorded telemarketing calls.

22.    Defendant did not comply with all rules, regulations, statues, and declaratory rulings related to its prerecorded telemarketing calls.

23.    Congress delegated to the Federal Communications Commission (FCC) the authority to make rules and regulations to implement the TCPA" and

8

therefore its orders have the force of law. *See, e.g.*, *Satterfield v. Simon & Schuster, In*c., 569 F.3d 946, 953 (9th Cir.2009) (citing *Chevron v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843-44 (1984); 47 U.S.C. §227(b)(2)).

24.    FCC rules and regulations "require prior express written consent for all … prerecorded telemarketing calls to wireless numbers and residential lines… ."  FCC rules and regulations  rules "require an automated, interactive opt-out feature at the outset of any … artificial or prerecorded telemarketing Call that could be answered by the consumer in person and is available throughout the duration of the … prerecorded telemarketing call." [1]

25.  As a result of Defendant's unlawful issuance of pre-recorded telemarketing calls to cellular and/or residential telephones, Plaintiff and putative class members were caused actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited pre-recorded phone calls,

---

[1]  "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
(ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law."

wrongfully occupying their telephone lines and depriving them of the use of their telephones during the duration of the wrongful pre-recorded call, causing them to waste their time and effort to listen to such wrongful pre-recorded calls, depleted the battery life of their telephones, invaded their privacy, and the monies paid to their telephone carriers for the receipt of such calls. In addition, the calls violated their right of privacy.

## IV. PLAINTIFFS' EXPERIENCE

26.    Plaintiff's  cellular telephones is used as a residential telephone, in all or part.

27.    Starting  in  or  around  April  2018,  Plaintiff  received  pre-recorded telemarketing or advertising calls from Defendant, on Plaintiff's cellular phone[2], regarding Defendant's sale of its goods and services.

28.    Beginning in April 2018, Plaintiff received one or more pre-recorded call(s)  on  his  cellular  telephone  made  or  caused  to  be  made  by  Defendant  or Defendant's agent, employee, and/or an individual acting on Defendant's behalf, which stated one or more of the following pre-recorded telemarketing calls issued

---

[2]   Plaintiff's cell telephone number is (205) ***-2135. Plaintiff will provide the complete number to legal counsel for Defendant without the need to file a discovery request.

by Defendant:

> … reaching out to you … Hi, this is Five Star Roofing and Restoration.  We're reaching out to you because we've had a lot of severe weather here in the last year or so, and our team has had a lot of success getting roofs approved for replacement in the Birmingham and surrounding areas.  If you are interested in a free roof inspection to find out if you are eligible for that, give us a call back at 205-319-1273.  Once again, this is Five Star Roofing and Restoration.  Reach us back at 205-319-1273.

29.    Plaintiff received one or more Robocalls from the Defendant without his  express consent or written consent and/or the Robocall did not contain the opt-out mechanism required by the TCPA and/or its rules, regulations, or declaratory rulings.

30.    Defendant's prerecorded message(s) constitutes telemarketing because it encouraged the future purchase or investment in property, goods, and/or services, i.e., sold or provided by Defendant.

31.    Plaintiff has never given Defendant express or written consent to contact Plaintiff via prerecorded telemarketing calls and did not consent to receive telemarketing calls that did not contain an opt out mechanism that would allow Plaintiff to opt out of and avoid future calls.

32.    Defendant's telemarketing call(s) did not provide the opt-out mechanism required by rule, regulation, statute, or declaratory ruling related to

prerecorded telemarketing calls and advertisements.

33.    Defendant was, and is aware, that they are placing unsolicited Robocalls to Plaintiff and other consumers without their prior express or written consent.

34.    Defendant was, and is aware, that they are placing Robocalls and/or prerecorded telemarketing calls without including an opt-out mechanism.

35.    Defendant tried to adhere to the prohibition to not make Robocalls or pre-recorded calls to telephone numbers registered or listed on the Do Not Call registry, or other applicable list.

## V. CLASS ALLEGATIONS

36.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> **Robocall Class**: All persons in the United States who (1) received a telephone call; (2) promoting Defendant's services and goods; (3) that featured an artificial or pre-recorded voice; and (4) for which the caller had no record of prior express or written express consent to make such call to the telephone number that received it or (5) for which the call did not include an opt out mechanism.

12

37.     Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

38.     The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendant's records.

39.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

  a.  Whether Defendant's conduct violated the TCPA;

  b.  Whether Defendant made calls featuring an artificial or pre-recorded

voice;

c.  Whether Defendant and/or its agents systematically made phone calls to persons who did not previously provide Defendant and/or its agents with their prior express consent or written consent to receive such phone calls;

d.  Whether Defendant failed to provide an opt-out mechanism required by law, rule, or regulation; and

e.  Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

40.   Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

41.   Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor counsel has

14

any interest adverse to those of the other members of the Class.

42.     This class action is appropriate for certification because Defendant has acted, or refused to act, on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

43.     This case is appropriate for certification because class proceedings

are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class himself could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court, and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

44.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION
## VIOLATION OF 47 U.S.C § 227
## <u>(On behalf of Plaintiff and the Robocall Class)</u>

45.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.    Defendant made unsolicited and unwanted telemarketing calls to the cellular number or residential telephone number belonging to Plaintiff and the other members of the Robocall Class without their prior express consent or written express consent and such unwanted telemarketing calls did not include an opt out mechanism as required by applicable law, rule, or regulation.

47.    Defendant made unsolicited telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the Robocall Class using a prerecorded or artificial voice, more commonly known as a "Robocall" and/or made calls to Plaintiff and the other members of the Robocall Class that did not include an opt out mechanism.

48.    By making, or having made on its behalf, unsolicited Robocalls utilizing an artificial or pre-recorded voice to Plaintiff's and the Class's telephones without their prior written express consent, Defendant violated the TCPA, including but not limited to 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. §

17

227(b)(1)(B) and applicable rules, regulations, and declaratory rulings. As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Robocall Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in statutory damages for each violation of the TCPA.

49.    Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Richard Willis, on behalf of himself and the putative Class, respectfully request that this Court enter an order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiff Richard Willis as representative of the Robocall classes, and appointing the undersigned legal counsel for Mr. Willis as Class Counsel;

B. Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, inter alia, an order prohibiting Defendant

from engaging in the wrongful and unlawful acts described herein, and ensuring that the Defendant makes all efforts to adhere to all regulations, rules and declarative rulings by the FCC and FTC related to automated and prerequisite order calls;

C.     An award of actual and statutory damages;

D.     Awarding Plaintiff and the Robocall classes their reasonable litigation expenses and attorneys' fees;

E. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

F.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted, this the 1st day of May, 2018


/s/ Jim McFerrin

**OFCOUNSEL:**
**McFERRIN LAW FIRM, L.L.C.**
**3117 Manitou Lane**
**Birmingham, Al 35216**
**(205) 637-7111**
**jhmcferrin@gmail.com**

19

**SERVE BY PERSONAL SERVICE:**

5 Star Roofing and Restoration, LLC
c/o 5 Star Roofing and Restoration, LLC
Brenda Buttram
237 OXMOOR CIRCLE SUITE 107
HOMEWOOD, AL 35209